**FILED**
**Nov 18, 2022**
**08:39 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT NASHVILLE

| | | |
|---|---|---|
| **Michael Hopson,** | ) | **Docket No. 2022-06-0393** |
| **Employee,** | ) | |
| **v.** | ) | |
| **Driven Brands Holdings,** | ) | **State File No. 69720-2021** |
| **Employer,** | ) | |
| **And** | ) | |
| **Hartford Accident and Indemnity Co.,** | ) | **Judge Kenneth M. Switzer** |
| **Carrier.** | ) | |

## EXPEDITED HEARING ORDER

Michael Hopson injured multiple body parts in a car accident while working for Driven Brands Holdings on August 18, 2021. Driven Brands accepted the claim, authorized treatment with various physicians, and paid temporary total disability benefits during periods when authorized doctors took him off work.

The parties now disagree regarding Mr. Hopson's request for additional medical benefits. Although Driven Brands agreed to pay for all authorized treatment, it disputes Mr. Hopson's entitlement to additional treatment and temporary disability benefits.

After an expedited hearing on November 2, 2022, the Court holds Mr. Hopson is likely to prevail at a hearing on the merits on his entitlement to additional treatment with a dentist and neurologist, and to past temporary total disability benefits from July 1 to 19, 2022.

### Claim History

*Treatment*

The work accident caused injuries to Mr. Hopson's head, neck, left shoulder, teeth and eyesight. He testified that he went to the emergency room afterward but offered no

1

records from that treatment. Mr. Hopson has received treatment from many authorized physicians since then.

The authorized treatment began in September 2021, when Mr. Hopson chose Dr. Malcolm Steele from a panel of physicians. He saw Dr. Steele's physician assistant throughout his initial treatment. At the first visit, she diagnosed a left-shoulder contusion, neck strain, headache, broken tooth and visual floaters, and she ordered physical therapy. She referred Mr. Hopson to Promise Dental for his teeth, and an ophthalmologist, Dr. Stuart Shofner, for his vision. On October 19, the physician assistant released Mr. Hopson to full-duty work.

In the meantime, Mr. Hopson saw Dr. Shofner in October. He noted , "[p]t has cataracts, non-work-related," and returned him to full-duty work. According to Mr. Hopson, Dr. Shofner also prescribed polarized sunglasses, but he did not provide any evidence relating the need for glasses to a work-related condition.

As to his teeth, Mr. Hopson was seen at Promise Dental on November 1. The dentist recommended an extraction and bone graft. Promise Dental sent Mr. Hopson to another dental practice to begin the treatment; according to Mr. Hopson, the dentist at Promise Dental does not perform the required dentistry. An implant remains necessary. Mr. Hopson testified that the dental work is incomplete because the provider (Promise Dental or possibly the other dental practice) requested payment upfront.

Driven Brands argued that Mr. Hopson declined to sign a form agreeing to be liable if the carrier did not pay the bill, but counsel did not introduce this form. According to Driven Brands's attorney, it asked to pre-pay, but Promise Dental did not agree. Driven Brands also looked for other dental practices to complete treatment, but they likewise require Mr. Hopson's signature on "standard" co-liability paperwork. Counsel offered no proof on these contentions. Driven Brands additionally asserted that some of the recommended dental treatment is not work-related, but it offered no medical proof on that point, and Mr. Hopson denied that any dentist told him that.

Mr. Hopson's shoulder, neck, and head symptoms persisted about three months after the accident, so he returned to Dr. Steele. The physician assistant referred him to a neurologist. On December 3, she referred him to an orthopedic specialist for his neck and shoulder and took him off work, noting he should not drive until seen by a specialist.

Mr. Hopson saw a panel-selected neurologist, Dr. Subir Prasad, on January 13, 2022. Dr. Prasad diagnosed a post-traumatic headache and a blind spot in his vision, and he recommended an MRI.

In February 2022, Mr. Hopson saw orthopedist Dr. Ryan Snowden for his neck and shoulder. Dr. Snowden concluded that the shoulder is "the source of his discomfort." So,

he referred him to a shoulder specialist, Dr. Matthew Willis. Driven Brands honored the referral.

Mr. Hopson saw Dr. Willis once, on March 3. Dr. Willis diagnosed adhesive capsulitis, recommended additional physical therapy, and administered an injection. Dr. Willis also noted that he believed modified duty was appropriate, but he declined to see Mr. Hopson again due to their disagreement over whether he should be off work entirely. Other than more physical therapy, treatment for the shoulder did not resume for several months.

Returning to the neurological treatment, Mr. Hopson had an MRI in late March. At the next visit on June 1, Dr. Prasad prescribed headache medication, took Mr. Hopson off work, and restricted him from driving. Dr. Prasad recommended a return visit in the next month.

Mr. Hopson testified that when he tried to follow up with Dr. Prasad in late June and early July, he arrived at appointments but was turned away because he did not pass the clinic's Covid-19 protocols. He likewise testified that he attended physical therapy, but had to stop in July due to illness.

Then in a July 19 letter, Dr. Prasad released Mr. Hopson to full-duty work. The next day, Dr. Prasad wrote another letter discharging him from his care but also wrote that Mr. Hopson should see another physician. Neither party introduced notes from any visit with Dr. Prasad in July; it is unknown whether he saw Dr. Prasad at that time. Mr. Hopson's declaration states that he is still experiencing headaches and other symptoms.[1]

Returning to the shoulder, Mr. Hopson testified on cross-examination that he selected specialist Dr. Chad Price from a panel. Dr. Price saw him on September 22 and found chronic shoulder pain. He explained:

> His exam is consistent with a possible cervical spine pathology or rotator cuff tear. However, his mechanism of injury is not consistent with these pathologies. He describes being hit from the side at approximately 15 mph. That is not a mechanism consistent with a rotator cuff tear or cervical pathology.

Dr. Price additionally recommended an MRI but wrote "we will decline the option to pursue his treatment at this time."

---

[1] Mr. Hopson went to the emergency room on July 20, complaining of side effects from medications Dr. Prasad prescribed and of Covid-19 symptoms. Records from that visit do not relate his condition to work or to medications for the work injury; rather, they focus almost entirely on Covid-19.

3

*Medical Bills*

Mr. Hopson introduced medical bills and explanation of benefit forms. Driven Brands's counsel reviewed them and stated that he believed bills for treatment with authorized physicians had all been paid, or would be paid shortly. Counsel reviewed the bills and agreed that Driven Brands has paid or will pay the following:

| **Physician** | **Date of Service** | **Amount** |
|---|---|---|
| Dr. Prasad | January 13, 2022 | $315.00 |
| | June 1, 2022 | $255.00 |
| Promise Dental | October 4, 2021 | $365.00 |
| | November 1, 2021 | $942.00 |
| Periodontal and Implant Association of Middle Tennessee | November 22, 2021 | $266.00 |

Driven Brands also agreed to pay for emergency treatment in 2021 for the work accident but needs to investigate those sums further.

*Temporary Disability Benefits*

Mr. Hopson started receiving temporary benefits on August 27, 2021. Around that same time, he received a separation letter, which he did not introduce. Mr. Hopson testified that he was fired for filing a workers' compensation claim but offered no proof of that. The only other related evidence is a December 3, 2021 notice of controversy, which states that Driven Brands stopped compensation, in part, because "[t]he claimant has been terminated by his employer for cause[.]"

Mr. Hopson further testified that Driven Brands did not pay certain temporary disability payments he believes he was owed throughout his treatment. Driven Brands agreed that it did not pay at various times when Mr. Hopson was not under restrictions or was noncompliant with treatment.

Mr. Hopson agreed on cross-examination that Dr. Steele's physician assistant returned him to full duty on October 19 and that afterward, neither Dr. Shofner nor Promise Dental assigned work restrictions.[2] The physician assistant took him off work again on December 3, and Driven Brands reinstated temporary disability payments afterward. The benefits ceased again in mid-March 2022, after Dr. Willis placed him on modified duty.

---

[2] Mr. Hopson testified that Dr. Anna Skelo, an unauthorized provider, took him off work for this time in response to counsel's questioning on cross-examination, but he offered no medical records to prove that.

4

Benefits resumed on June 1, when Dr. Prasad took Mr. Hopson off work, but they ended on July 1. A Notice of Change or Termination of Compensation Benefits dated June 30, 2022, states "Claimant has not complied with medical treatment as recommended by the treating physician and there is no additional OOW information to support ongoing payments." Driven Brands has paid no disability benefits since.

Much of the testimony on cross-examination focused on Mr. Hopson's alleged noncompliance in June and July. Mr. Hopson testified that he had appointments with Dr. Prasad on June 18 and July 11. He recalled that at least twice, he was turned away because he could not pass the Covid-19 screening.

Along these lines, in June, Mr. Hopson resumed physical therapy but only completed three sessions. Afterward, he said he felt too ill to attend, either because he may have had Covid-19 or was experiencing side effects from medications. Mr. Hopson maintained that he called and emailed to cancel the physical therapy appointments, which had been set weeks in advance. He denied being rude or using foul language with staff.

Mr. Hopson tested positive for Covid-19 on July 20, as confirmed in emergency room records from that date.

**Findings of Fact and Conclusions of Law**

For the Court to grant Mr. Hopson's requests, he must show he is likely to prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1) (2022); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

*Additional Treatment*

Driven Brands did not contest the compensability of Mr. Hopson's claim but contended that he is not entitled to more treatment, with the exception of finalizing the dental work.

The Workers' Compensation Law requires an employer to provide reasonable, necessary treatment at no cost to the injured worker. Tenn. Code Ann. § 50-6-204(a)(1)(A). Treatment is required only for conditions arising primarily out of employment. Tenn. Code Ann. § 50-6-102(12). "Arising primarily out of employment" means that it must be shown "to a reasonable degree of medical certainty" that the work accident contributed more than fifty percent in causing the need for treatment." *Id.*

Considering each individual injury, Dr. Shofner wrote that Mr. Hopson's cataracts are not related to the work incident. Mr. Hopson offered no contrary medical proof. He

5

cannot prevail on his request for more vision treatment without a medical opinion relating his current eyesight problems to the work injury.

Likewise, Dr. Price concluded that Mr. Hopson's shoulder injury did not arise from employment, reasoning that the mechanism of injury could not have caused Mr. Hopson's current shoulder and neck conditions. Mr. Hopson did not introduce a conflicting medical opinion to support the work-relatedness of these conditions. Moreover, Dr. Price's opinion is presumed correct under Tennessee Code Annotated section 50-6-102(12)(E).

The remaining, more difficult questions involve treatment for his teeth and headaches.

Turning first to the dental treatment, Mr. Hopson testified, without contradiction, that the authorized provider required pre-payment. Driven Brands offered *explanations* from its attorney regarding why this treatment is at a standstill. But it offered no actual evidence, such as a copy of the disputed "standard" form requiring Mr. Hopson to pay if the carrier does not pay, or an affidavit from its adjuster explaining the difficulties she encountered in authorizing the treatment.

Given the past delays in payment for authorized treatment, Mr. Hopson's reluctance to agree to be liable if the carrier declines payment is entirely reasonable—especially since Driven Brands alleged, without an expert opinion, that some of the treatment is not work-related. Further, no admissible proof suggests that Promise Dental is unwilling to accept pre-payment, and the Court cannot imagine why that would be unacceptable to any physician.

Section 50-6-204(a)(1)(A) is clear: treatment should be "free of charge . . . including such dental work made reasonably necessary by accident[.]" Driven Brands must abide by this charge. The Court holds that Mr. Hopson is likely to prevail at a hearing on the merits that he is entitled to additional dental treatment. If Promise Dental refuses to treat Mr. Hopson further, Driven Brands must continue to offer panels of dentists until a dentist willing to treat him is located.

The next question is whether Mr. Hopson is entitled to additional neurological treatment for his headaches. While Driven Brands pointed to a note placing him at full duty, *no medical record* suggests that Mr. Hopson saw Dr. Prasad for the recommended follow-up visit to determine whether he needs additional treatment. Instead, the parties offered two letters: on July 19, Dr. Prasad wrote that he may return to work without restrictions, and on July 20, the doctor wrote that he "cannot serve as [Mr. Hopson's] physician," but he did not give any reason for the discharge. He also wrote that Mr. Hopson "should place [him]self under the care of another physician as soon as possible."

The Appeals Board wrote in *Limberakis v. Pro-Tech Sec., Inc.,* 2017 TN Wrk. Comp. App. Bd. LEXIS 53 (Sept. 12, 2017), that "an employer cannot unilaterally terminate an employee's entitlement to reasonable and necessary medical benefits following a compensable work injury." *Id.* at *6.

In *Limberakis,* the authorized treating physician placed the employee at maximum medical improvement, determined he needed no additional treatment, and refused to see him. After an expedited hearing, the Court ordered the employer to offer a panel, and the Appeals Board affirmed. The Board wrote, "In the absence of evidence directed specifically to the issue of termination of treatment, the employer must provide [the employee with] future, free reasonably necessary medical treatment." *Id.* The Board found it "significant" and "determinative" that the case was at the interlocutory phase and that the employee's claim was accepted. *Id.* at *9.

Here, no evidence suggested that Mr. Hopson is at maximum medical improvement or that he does not need additional treatment for his headaches. In fact, Dr. Prasad recommended that he find another doctor. Mr. Hopson testified in his declaration that he still suffers symptoms. An employee's assessment as to his own physical condition "is competent testimony that is not to be disregarded." *Id.* at *10.

As for the asserted noncompliance, Tennessee Code Annotated section 50-6-204(d)(7) states that when an employee "refuses . . . to accept the medical . . . services that the employer is required to furnish . . ., the injured employee's right to compensation shall be suspended and no compensation shall be due and payable while the injured employee continues to refuse." The Appeals Board explained that this provision means that "in circumstances where an employee is noncompliant with medical treatment, compensation shall be held in abeyance, not terminated." *Newell v. Metro Carpets, LLC*, 2016 TN Wrk. Comp. App. Bd. LEXIS 57, at *4-5 (Sept. 28, 2016).

In this case, even after rigorous cross-examination, Driven Brands offered no evidence that Mr. Hopson "refused" to accept Dr. Prasad's treatment. Mr. Hopson testified, without contradiction, that he went to the clinic twice but was turned away due to Covid-19 symptoms. He also stated that feeling ill, possibly from Covid-19 or side effects from medication, prevented him from completing physical therapy. The Court finds no "refusal" under these circumstances. Notably, Driven Brands terminated compensation on July 1, *before* any missed July appointments with either Dr. Prasad or physical therapy. The noncompliance argument is unpersuasive.

Therefore, Mr. Hopson is likely to prevail at trial on his request for additional treatment from a neurologist. Since Dr. Prasad refuses to treat Mr. Hopson, Driven Brands must offer a panel of neurologists. *Limberakis,* at *10.

*Medical Bills*

Driven Brands agreed that it is responsible for authorized treatment as outlined previously. It shall investigate whether bills for any work- related post-accident emergency treatment are outstanding, and if so, pay them immediately. On this record, however, the Court cannot order payment for the remaining sums. Mr. Hopson may gather additional evidence showing that the bills were for reasonable and necessary treatment, which was causally-related to the work accident. *Eaves v. Ametek, Inc.,* 2018 TN Wrk. Comp. App. Bd. LEXIS 53, at *8 (Sept. 14, 2018).

*Temporary Disability Benefits*

The workers' compensation statutes list two types of temporary disability benefits: temporary partial disability benefits and temporary total disability benefits. *See* Tenn. Code Ann. § 50-6-207.

First considering temporary partial disability benefits, as applicable here, these are warranted when a treating physician has released the injured worker to return to work with restrictions before maximum medical improvement, and the employer cannot return the employee to work within the restrictions. *Jones v. Crencor Leasing and Sales,* 2015 TN Wrk. Comp. App. Bd. 48, at *8 (Dec. 11, 2015). However, an employee who is terminated for cause is not entitled to temporary partial disability benefits. *Id.* at *10.

Here, the evidence is inconclusive. Mr. Hopson testified that he was terminated because he filed a workers' compensation claim, but he offered no supporting documentation. In contrast, Driven Brands relied on a form stating the termination was for cause, but it did not provide supporting documentation or testimony.

Mr. Hopson bears the burden of proof. Tenn. Code Ann. § 50-6-239(c)(6). At this time, he has not satisfied his burden as to temporary partial disability benefits. Based on this record, for the periods where Mr. Hopson was placed on restricted duty, the evidence is insufficient to show either that Driven Brands could not return him to work within the restrictions, or that it fired him without cause. Mr. Hopson may gather additional evidence and renew his request for these benefits at a later hearing.

Turning now to temporary total disability benefits, an injured worker is eligible for them if: (1) the worker became disabled from working due to a compensable injury; (2) there is a causal connection between the injury and the inability to work; and (3) the worker established the duration of the period of disability. *Jones,* at *7. Temporary total disability benefits are terminated by the ability to return to work. *Id.*

Applying these principles, Driven Brands accepted the claim with regard to the head

8

injury, so a causal connection exists between the injury and Mr. Hopson's inability to work or drive.

As to the duration of disability, Dr. Prasad's records clearly state that he was off work starting June 1, 2022. As previously discussed, Mr. Hopson complied with treatment. Still, Driven Brands ended compensation on July 1, *before* Dr. Prasad returned him to full duty on July 19. Therefore, Mr. Hopson has shown total disability from July 1 through July 19, or nineteen days. The Court holds Mr. Hopson is likely to prevail at trial in proving entitlement to temporary total disability benefits for this period.

As a final matter, Mr. Hopson is not currently restricted from work by any authorized physician, so he is not entitled to ongoing temporary disability benefits at this time.

IT IS THEREFORE ORDERED AS FOLLOWS:

1. Driven Brands must authorize and schedule, within ten business days of this order, additional treatment with Promise Dental for any reasonable and necessary dental treatment causally-related to the work injury under Tennessee Code Annotated section 50-6-204(a)(1)(A). If Promise Dental is unwilling to continue to treat Mr. Hopson, within ten business days of this order, Driven Brands must offer him a panel of dentists willing to treat him and shall immediately schedule an appointment once Mr. Hopson makes his selection. Driven Brands must continue to offer Mr. Hopson a panel of dentists until a willing dentist is located.

2. Driven Brands must offer a panel of neurologists within ten business days of this order, for Mr. Hopson to select another physician for any reasonable and necessary medical treatment causally-related to the work injury under Tennessee Code Annotated section 50-6-204(a)(1)(A). Driven Brands shall immediately schedule an appointment once Mr. Hopson makes his selection.

3. Driven Brands must pay, within ten business days of this order, for all past *authorized* medical treatment. It shall also investigate whether any sums are owed for post-accident emergency treatment., and if so, it shall pay them immediately. It must also continue to promptly pay for all continuing authorized medical treatment that is reasonable, necessary and related to the work accident.

4. Driven Brands must pay Mr. Hopson, within ten business days of this order, past temporary total disability benefits totaling $2,331.49.[3] No other disability benefits are currently owed.

---

[3] Mr. Hopson's agreed weekly compensation rate is $858.98, or a daily rate of $122.71. When multiplied by nineteen days, he is owed $2,331.49.

5. The Court sets a status hearing on **January 30, 2023, at 9:45 a.m. Central Time.** You must dial (615) 532-9552 or (866) 943-0025 to participate.

6. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

**ENTERED November 18, 2022.**

*Kenneth M. Switzer*

**JUDGE KENNETH M. SWITZER**
**Court of Workers' Compensation Claims**

10

**Appendix**

Technical record:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Order Setting Status Hearing
4. Request for Expedited Hearing
5. Order on Status Hearing
6. Employee's Unpaid Temporary Disability Benefits
7. Unfinished Dental Treatment/Unpaid Temporary Disability Benefits (amended)

Evidence:

1. Declaration of Mr. Hopson
2. Composite Medical Records
3. Wage statement
4. Panels
5. Notices of Controversy
6. Medical bills/explanation of benefit forms
7. (None)
8. Dental treatment records (identification only)
9. Works restrictions
10. Records, Dr. Chad Price
11. Records, Ascension St. Thomas Hospital West

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent as indicated on November 17, 2022.

| Name | Certified Mail | Regular mail | Email | Sent to |
|------|----------------|--------------|-------|---------|
| Michael Hopson, employee | X | | X | mhopson@comcast.net<br>3121 Wilmoth Rd.<br>Nashville TN  37207 |
| Joseph Ballard, employer's attorney | | | X | Joseph.ballard@thehartford.com |

_____

Penny Shrum
Clerk, Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

11



<u>Expedited Hearing Order Right to Appeal</u>:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board.  To appeal an expedited hearing order, you must:

1.  Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed.  When filing the Notice of Appeal, you must serve a copy upon all parties.

2.  You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3.  You bear the responsibility of ensuring a complete record on appeal.  You may request from the court clerk the audio recording of the hearing for a $25.00 fee.  If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal.  Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal.  The statement of the evidence must convey a complete and accurate account of the hearing.  The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board.  If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4.  If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence.  The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement.  All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury: _____**

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies). Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____     ☐ Motion Order filed on _____

☐ Compensation Order filed on_____     ☐ Other Order filed on_____

issued by Judge _____.

### Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

### Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*